IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WASIA K. MAYA,<br>A# xxx-xx7-312, | )<br>)<br>) |
| Petitioner, | )<br>) |
| vs. | ) Case No. 21-cv-755-NJR |
| | ) |
| DAMON ACUFF,[1] Warden, Pulaski<br>County Detention Center,<br>MERRICK GARLAND,[2] Attorney<br>General,<br>ALEJANDRO MAYORKAS, Secretary,<br>U.S. Department of Homeland Security,<br>TAE JOHNSON, Acting Director,<br>U.S. ICE,<br>and HENRY LUCERO, U.S. ICE Director,<br>Chicago Field Office, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Respondents. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Wasia K. Maya is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 1). He filed his Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on June 30, 2021, while he was detained at the Pulaski County Detention Center in Ullin, Illinois, in this judicial district. (Doc. 1).

---

[1] Warden Acuff is no longer Maya's immediate custodian, as Maya is currently detained at the Chase County Detention Center in Cottonwood Falls, Kansas. (Docs. 24, 28). The Clerk will thus be directed to substitute the Warden of that institution, in his/her official capacity, as a Respondent herein. *See* Federal Rule of Civil Procedure 25(d); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005) (proper respondent is the prisoner's current custodian).

[2] The Petition incorrectly spelled the Attorney General's surname as "Garrand." (Doc. 1, p. 1; Doc. 6, p. 1). The Clerk will be directed to correct the error.

1

The Petition asserts that Maya has been wrongly subjected to mandatory detention under 8 U.S.C. § 1226(c) because he was not taken into immigration custody until some 12 years after he was released from prison after completing a criminal sentence. (Doc. 1, pp. 1-2, 13-16). Additionally, he claims that the length of his detention (7 months as of the date he filed the action) has become prolonged and violates his Fifth Amendment due process rights. (Doc. 1, pp. 2-3, 12-13, 19-25). He seeks immediate release or, in the alternative, an immediate bond hearing at which the government has the burden to justify his ongoing detention. (Doc. 1, pp. 2, 27). Respondents filed an initial Response (Doc. 6) opposing the Petition, to which Maya replied (Docs. 10, 14, 15).

On August 17, 2021, Respondents moved to dismiss the action after Maya was transferred to the custody of the United States Marshals Service ("USMS") in connection with a pending criminal case in the Western District of Missouri. (Doc. 16). Respondents withdrew that motion, however, after Maya was returned to ICE custody. (Docs. 24, 25). Maya was then housed in the Chase County Detention Center in Cottonwood Falls, Kansas, where he remains. (Docs. 24, 28). Respondents filed a Supplement to their Response (Doc. 26), and Maya filed two supplementary Replies (Docs. 29, 31). Maya also filed a motion seeking to expedite the Court's ruling on his Petition (Doc. 32).

## BACKGROUND

Maya is a 43-year-old citizen of Tanzania who entered the United States lawfully on April 20, 2001, on a student visa to attend Texas Southern University. (Doc. 1, p. 6). In 2004, he fathered a son born in Texas, with Ms. Msutze. In April 2005, he married a U.S. citizen, Ms. White, but the couple divorced some years later. (Doc. 1, p. 8). In October

2005, Maya briefly left the U.S. with advance parole (Form I-131), returning to the U.S. on November 8, 2005. (Doc. 6, p. 2). He has resided in the U.S. ever since. On March 15, 2006, Maya's status was adjusted to conditional permanent resident based on his marriage to Ms. White. (Doc. 1, p. 8; Doc. 6, p. 2).

In May 2006, Maya was indicted in the Southern District of Texas for conspiracy to transfer stolen goods in interstate commerce in violation of 18 U.S.C. § 371, and two counts of interstate transfer of stolen goods in violation of 18 U.S.C. § 2314, for selling stolen computer items starting in January 2005.[3] (Doc. 1, p. 6; Doc. 6, p. 2). He pled guilty to the conspiracy count and was sentenced to 27 months' imprisonment on October 6, 2007. *Id.* The other two counts were dismissed. On March 16, 2008, Maya's conditional permanent resident status was terminated because he failed to timely file a form I-751 (Petition to Remove Conditions on Residence). (Doc. 1, p. 6; Doc. 6, p. 2).

Maya was released from federal prison on May 2, 2008; he remained free for 12 years. Maya fathered a second son, born on April 16, 2012, whose mother is Ms. Ondara.

On November 17, 2020, Maya was taken into immigration custody from his home in Columbia, Missouri. (Doc. 1, p. 7; Doc. 6, p. 2; Doc. 6-1, p. 3). He was charged with being removable from the U.S. on three grounds: (1) having been convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii); (2) being inadmissible at the

---

[3] *See United States v. Maya*, Case No. 06-cr-00174-3 (S.D. Tex.). Respondents note that Maya also has a 2003 Texas theft conviction that resulted in a two-day jail sentence. (Doc. 6, p. 2). Notably, however, the pending removal case is not based on that offense. (Doc. 1-1, pp. 2, 5).

time of admission[4] due to a conviction of a crime involving moral turpitude pursuant to 8 U.S.C. § 1227(a)(1)(A); and (3) termination of his conditional permanent resident status pursuant to 8 U.S.C. § 1227(a)(1)(D)(i). (Doc. 6, p. 3). Maya retained counsel and denied all grounds of removability.

On January 7, 2021, an Immigration Judge ("IJ") held a hearing, denied Maya's request for a continuance so he could seek legal status by filing a Form I-751 petition and a U visa petition, and sustained the three charges of removability. (Doc. 1, p. 7; Doc. 1-1, p. 9; Doc. 6, p. 3). The IJ also denied bond, finding Maya was subject to mandatory detention under 8 U.S.C. § 1226(c). Maya did not appeal the bond decision by the deadline of February 8, 2021. (Doc. 6, p. 4). The IJ's written order for removal was issued on January 11, 2021, and Maya timely appealed to the Board of Immigration Appeals ("BIA"). (Doc. 6, p. 4).

On March 9, 2021, Maya filed his I-751 good faith waiver with USCIS. (Doc. 1, p. 8). No decision has been made regarding that waiver request. Maya also sought relief including cancellation of removal and a waiver of inadmissibility under INA § 212. (Doc. 1, p. 8; Doc. 20, p. 24-25; Doc. 31, p. 9). He disputes the IJ's findings on his inadmissibility based on his criminal conviction as well as the other grounds for removal. *Id.* Maya asserts he can show hardship based on his qualifying relatives (his two minor

---

[4] Maya had originally been charged as removable for having been convicted of a crime involving moral turpitude within five years after admission to the U.S. pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), but that charge was withdrawn. (Doc. 6, p. 3). Both the aggravated felony and moral turpitude grounds appear to be premised on Maya's 2007 federal conspiracy conviction. (Doc. 1-1, pp. 2, 5).

children, the younger of whom lived with Maya before he was detained).[5] (Doc. 1, pp. 8-9).

On June 29, 2021, the BIA dismissed Maya's appeal, affirming the IJ's finding of removability under 8 U.S.C. § 1227(a)(1)(D)(i) (termination of conditional permanent resident status), but the BIA did not address the other two grounds for removability. (Doc. 6, p. 4). On July 16, 2021, Maya filed a petition for review of the BIA's decision with the Eighth Circuit Court of Appeals and moved to stay removal. (Eighth Circuit Case No. 21-2573).

On August 5, 2021, Maya was transferred to USMS custody pursuant to his indictment for Fraud and Misuse of Visas and Aggravated Identity Theft in the Western District of Missouri, Case No. 21-cr-04059.[6] (Doc. 24; Doc. 26, p. 1). On September 8, 2021, the judge in the criminal case ordered Maya's release under the Bail Reform Act. But he was not set free because ICE re-detained him on September 10, 2021. (Doc. 26, p. 1).

Meanwhile, on August 27, 2021, the Eighth Circuit granted the government's motion to remand Maya's immigration case to the BIA to address those portions of the

---

[5] A custody case regarding Maya's younger son is pending in Boone County, Missouri. A hearing was held on October 7, 2021, with Maya participating remotely. (Doc. 32). Maya states that because he remains in detention, custody is likely to be granted to the child's mother, Ms. Ondara, who has been living in Kenya since 2014. No order has yet been entered in the custody case, and Maya will attempt to reopen the matter if he is released. (Doc. 32, pp. 1-2; Doc. 1, p. 9; Doc. 1-1, pp. 11-13).

[6] Maya is charged with violating 18 U.S.C. § 1546(b)(1) for using another person's permanent resident card to obtain employment; the aggravated identity theft charge under 18 U.S.C. § 1028A is based on the same conduct. *United States v. Maya*, Case No. 21-cr-04059-BCW (W.D. Mo. Doc. 1, Aug. 3, 2021). Court documents, including electronic docket information, are public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (collecting cases).

IJ's ruling that the BIA did not discuss in its June 29, 2021 dismissal order. (Doc. 24, p. 2; Doc. 26, p. 2). Specifically, the government is asking the BIA to consider new evidence of Maya's waiver filing that was not previously submitted and wants the BIA to determine whether Maya is removable based on a conviction for an aggravated felony, regardless of the potential merits of his request for a waiver or adjustment of status. (Doc. 26, p. 2; Doc. 20, pp. 24-25).

Maya's immigration case is still pending on remand to the BIA; thus, his removal order is not final, and he remains in detention pursuant to 8 U.S.C. § 1226(c).[7] (Doc. 26, p. 2).

## DISCUSSION

As an initial matter, the Court notes that it retains subject matter jurisdiction over this case even though Maya has been moved to a detention facility outside this district, because the Petition was properly filed here under 28 U.S.C. § 2241 while Maya was imprisoned at Pulaski. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440 (2004) (citing *Ex parte Endo*, 323 U.S. 283, 306 (1944)).

Maya argues that he could only be subjected to mandatory detention under 8 U.S.C. § 1226(c) if he had been taken into immigration custody immediately after his release from his criminal sentence in 2008. Because that did not happen—and ICE waited to detain him until 12 years after he left prison—he claims his detention should be

---

[7] Respondents note that after the IJ ordered removal, the authority for Maya's detention changed to 8 U.S.C. § 1231 (detention under a final order of removal). After the remand to the BIA, however, ICE is again holding Maya pursuant to 8 U.S.C. § 1226(c) because the removal order is not final until the BIA issues its ruling. (Doc. 26, p. 2).

governed by 8 U.S.C. § 1226(a), which provides for discretionary release on bond. (Doc. 1, pp. 1-3). Further, he asserts that his detention without an individualized bond hearing to determine whether he poses a danger to the community or a flight risk violates his Fifth Amendment due process rights. Finally, he claims that the length of his detention independently violates his due process rights, as do the conditions of his confinement. (Doc. 1, p. 3).

There is no need for the Court to address the allegedly unconstitutional conditions of confinement at Pulaski as a basis for habeas corpus relief because Maya is no longer confined at that institution. (Docs. 24; 26).

Maya's statutory argument based on the "when…released" language of 8 U.S.C. § 1226(c)(1) is unavailing. He claims that the mandatory detention under this section must take place immediately upon the noncitizen's release from criminal custody and is not authorized where he was not detained until 12 years after he completed his criminal sentence. (Doc. 1, pp. 15-16; 22-25). Respondents correctly note, however, that the Supreme Court rejected Maya's argument in a 2019 decision. (Doc. 6, p. 8); *Nielsen v. Preap*, 139 S. Ct. 954, 964 (2019) (reversing Ninth Circuit and holding that mandatory detention under Section 1226(c) is permitted even where the noncitizen's release from criminal custody occurred years earlier). The cases Maya cites in support of his argument were all decided before *Preap*.

Maya's claims based on the length of his detention and lack of an individualized bond hearing raise constitutional questions that merit further consideration. Maya has now been imprisoned for a total of 11 months since ICE detained him in November 2020.

To be sure, 35 days of his detention were spent in USMS custody, but he has been in immigration custody for approximately 10 months as of the date of this Order. The record indicates that when the IJ determined in January 2021 that Maya was subject to mandatory detention under Section 1226(c), no assessment was made of whether his release would present a danger to the public or whether he would be a flight risk because release on bond was not an option.

Under 28 U.S.C. § 2241, a federal habeas court may grant release to a person who "is in custody in violation of the Constitution or laws or treaties of the United States." Noncitizens may challenge their civil immigration detention via a Section 2241 petition, *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001), and federal courts may consider individualized challenges to the constitutionality of immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841, 851-52 (2018) (Section 1226(e) does not bar court review of constitutional challenge to the statutory framework under which noncitizen is detained without bail); *Nielsen v. Preap*, 139 S. Ct. at 972 ("Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases).

The ordinarily "brief" detention associated with pending removal proceedings is constitutionally permissible. *Demore v. Kim*, 538 U.S. 510, 528-31 (2003) (observing that detention under Section 1226(c) lasts for less than 90 days "in the majority of cases"). As

8

Respondents note, Congress enacted Section 1226(c) because it deemed release on bond of noncitizens who have committed certain dangerous crimes to be too risky. (Doc. 6, p. 7). Yet such detention is not insulated from review in individual cases. Detention that becomes indefinite "would raise serious constitutional concerns." *Zadvydas*, 533 U.S. at 682 (detention longer than 6 months during attempts to execute final order of removal was presumptively unreasonable).

Detainees have the right to procedural due process in relation to restraints on their liberty. *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 690. At the same time, the government has a valid interest in detaining a noncitizen to (1) protect the community from danger or (2) prevent flight and ensure appearance at immigration proceedings. A habeas court must assess whether civil immigration detention is reasonably related to one of these purposes, balancing the detainee's significant liberty interest against the government's interests. *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Further, a habeas court has the inherent power to grant bail to a detainee. *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985).

A civil detainee is entitled to at least the same constitutional due process protections as are afforded to a criminal pretrial detainee. *See Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (involuntary civil commitment must be subject to "proper procedures and evidentiary standards"); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (freedom from physical restraint is "at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); *see also Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (drawing a parallel between criminal pretrial detention and civil immigration detention).

The government must justify continued civil confinement with "clear and convincing evidence" that the detainee poses a danger to the community. *Foucha*, 504 U.S. at 80. In assessing the constitutionality of continued immigration detention, courts consider several relevant factors, including: the length of immigration detention to date and whether it exceeds the time the noncitizen was in prison for the crime that prompted removal proceedings; the likelihood of continued detention and its duration; the conditions of detention and whether it is meaningfully different from punitive detention; whether delays in the removal proceedings were caused by the detainee or the government; and the likelihood that removal proceedings will be successful in light of any colorable defenses to removal. *See German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020); *Vargas*, 378 F. Supp. 3d at 727 (collecting cases); *Lopez Santos v. Clesceri*, No. 20-cv-50349-IDJ, 2021 WL 663180, at *5-7 (N.D. Ill. Feb. 19, 2021).

It is significant that in Maya's detention hearing in his criminal case in the Western District of Missouri on September 8, 2021, the magistrate judge ordered him to be released on bond. (Doc. 21 in *United States v. Maya*, Case No. 21-cr-04059 (W.D. Mo. Sept. 8, 2021)); Doc. 26, p. 1). The government sought to keep Maya in custody, but the judge concluded that he was "neither a danger nor a flight risk." (Doc. 21 in *United States v. Maya*, Case No. 21-cr-04059). In that proceeding under the Bail Reform Act, 18 U.S.C. § 3142, the government had the burden to demonstrate that no conditions of release would assure Maya's appearance or the safety of a person or the community, and that burden was not met. Under the due process provisions in this criminal proceeding, the judge determined that Maya should not be detained. In the context of his civil immigration detention, where

the IJ determined that his detention is mandatory under Section 1226(c), Maya has not had an opportunity for a bond hearing where flight risk or danger would be addressed.

The length of Maya's immigration detention, now approximating 10 months, raises constitutional concerns. It far exceeds the ordinarily "brief" 90-day period of detention under Section 1226(c) referenced by the *Demore* Court, and it has surpassed the presumptively reasonable six-month mark discussed in *Zadvydas*. Similar detention periods have been held to be unreasonably and unconstitutionally prolonged. *See, e.g.*, *Ochoa v. Kolitwenzew*, 464 F. Supp. 3d 972, 985-86 (C.D. Ill. 2020) (11-month detention was unreasonably prolonged); *Garcia Diaz v. Acuff*, 507 F. Supp. 3d 991, 997 (S.D. Ill. 2020) (detention of over one year that was likely to continue indefinitely warranted release). The length of detention is the most important factor in an as-applied challenge such as Maya's, and "the longer the detention, the more unreasonable it seems." *Lopez Santos*, 2021 WL 663180, at *5 (finding 18-month mandatory detention to be unreasonable); *see also Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808, 816 (C.D. Ill. 2018). In comparison to the 27-month sentence Maya received 14 years ago for the conviction that belatedly led to his removal proceedings, his time in immigration detention may well exceed the halfway mark of that sentence.

Significantly, given Maya's ongoing immigration proceedings, his detention is likely to continue for many months while the BIA considers his case on remand. In contrast to the status when Respondents initially answered the Habeas Petition (Doc. 6), the IJ's removal order is no longer final, thus Respondents are not in a position to remove him quickly. (Doc. 26, pp. 2-3). Nor does it appear that his removal from the U.S. can be

11

effectuated in the reasonably foreseeable future. The BIA, pursuant to the Eighth Circuit's remand on the government's motion, must complete its review of two of the three grounds underlying the IJ's removal order. The BIA is to consider new evidence as well—Maya's submission of his good faith waiver documents during the pendency of the BIA's original review of his case. (Doc. 26; Doc. 29, pp. 3-5; Doc. 31, pp. 9-10). It is unknown how long the BIA will take to render a decision; as of its September 14 notice, the matter had not yet been placed on the BIA's docket. (Doc. 32, p. 10). If the ruling is adverse to Maya, he will again have the right to seek review and a stay of removal from the Eighth Circuit. His detention is approaching the one-year mark and appears likely to exceed that milestone while he awaits a final order.

As to the conditions of Maya's current confinement, Maya asserts that it is not meaningfully different from punitive detention. (Doc. 29, p. 5; Doc. 31, pp. 7, 13). It is notable that he is being held in a county jail that serves as a detention facility for county inmates as well as immigration detainees.

The record does not indicate that Maya has caused delays in his removal proceedings, apart from exercising his right to seek review and asserting his defenses to removal. In contrast, the BIA has caused delay in that its initial dismissal of Maya's appeal did not include any analysis of two of the challenged grounds for his removal, an omission which the government sought to correct via the motion for remand granted by the Eighth Circuit.

It is unclear at this juncture whether the removal proceedings will ultimately be successful. Maya has raised more than one colorable defense to removal, and these

defenses have not yet been fully addressed in the ongoing proceedings. The Court cannot say that he has no chance of success.

On the key issues of whether Maya's release would endanger the public or pose a risk of flight, the Court finds it compelling that the Western District of Missouri ordered his release in his criminal proceeding, finding no danger or flight risk. Neither Maya's pending federal charges nor his 2007 conviction involved any violent conduct or danger to the public. Notably, he was at liberty for 12 years without endangering anybody after he served his 2007 sentence. Respondents do not suggest here that Maya would pose a danger to the public if he is released, and the record contains no indication that he is dangerous.

Likewise, nothing in the Respondents' pleadings or the record indicates that Maya would be a flight risk. To the contrary, the facts set forth by Maya demonstrate that he has significant ties to the U.S. (his two minor children who are U.S. Citizens), and he has a strong incentive to participate in the immigration proceedings and present his defenses to removal. He wants to resume parenting his younger son and pursue legal custody of the child. In order to do so, he must stay in the U.S. and litigate the matter in Missouri state court.

In consideration of the above factors, the Court concludes that Maya's ongoing prolonged detention is not reasonably related to the Respondents' interest in protecting the community and preventing flight. Maya's significant liberty interest outweighs the relatively slight risk of flight or danger, and habeas corpus relief is warranted subject to the conditions set forth below. These conditions of release will accomplish the purpose

of ensuring Maya will be present if his removal is ordered, without further depriving him of his liberty.

## DISPOSITION

**IT IS HEREBY ORDERED** that the Emergency Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as set forth below. The Motion to Expedite Ruling (Doc. 32) is **TERMINATED** as moot.

The Clerk of Court is **DIRECTED** to correct the spelling of Attorney General Merrick GARLAND's name on the docket.

The Clerk of Court is **DIRECTED** to terminate Warden Damon Acuff as a Respondent, and substitute as a Respondent (in his/her official capacity) the Warden of Chase County Detention Center, Cottonwood Falls, Kansas, because Petitioner Maya is now detained at that facility. (See Docs. 24, 28); FED. R. CIV. P. 25(d).

Respondents are **ORDERED to RELEASE** Petitioner Wasia K. Maya, pursuant to the following conditions:

1. Maya will reside at a certain residence and will provide his address and telephone contact information to Respondents;

2. Maya will comply with national, state, and local pandemic guidance regarding staying at home, sheltering in place, and social distancing;

3. The Court's order for release from detention may be revoked and Maya may be re-detained should he fail to comply with this order of release or with any condition of release set by the Department of Homeland Security ("DHS")/Immigration and Customs Enforcement ("ICE");

4. This Order does not prevent Respondents from taking Maya back into custody should he commit any crimes that render him a threat to public safety or otherwise violate the terms of release;

14

5. If a friend/family member of Petitioner Maya is able to provide transportation for Maya from his place of detention (Chase County Detention Center in Cottonwood Falls, Kansas as last reported) to his home in Columbia, Missouri, Maya or his friend/family member shall notify Respondents accordingly, and Respondents shall **IMMEDIATELY RELEASE** him to his friend/family when they arrive at his place of detention. Alternatively, if no friend/family member is able to transport Maya from his current detention center, Respondents will provide transportation for Maya from the Chase County Detention Center (or current place of detention) either to Maya's home or to a suitable public facility in Columbia, Missouri (such as the Boone County Courthouse), **on or before October 28, 2021**, where he will be **IMMEDIATELY RELEASED**. Respondents will facilitate communication between Maya and his friend/family member to arrange for transportation;

6. Maya will not violate any federal, state, or local laws; and

7. At the discretion of DHS and/or ICE, to enforce the above restrictions, Maya's whereabouts may be monitored by telephonic and/or electronic and/or GPS monitoring and/or location verification system and/or an automated identification system.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: October 21, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**